UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ANDRES PORFIRIO CANO,

                Plaintiff,

  - against -

SUSHI CHAIN, INC. (d/b/a Sushi Village), EN MEI
XIAO (a/k/a/ Tina Xiao) and XIN FENG LIN (a/k/a
Scott Lin, Xi Lin, and Xia Feng Lin),

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
19-CV-3509 (RRM) (LB)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Plaintiff Andres Porfirio Cano brings this action against defendants Sushi Chain, Inc., d/b/a Sushi Village ("Sushi Village"), En Mei Xiao (a/k/a Tina Xiao) ("Xiao"), and Xin Feng Lin (aka Scott Lin, Xi Lin, and Xia Feng Lin) ("Lin"), alleging violations of minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; minimum wage and overtime provisions of New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.*; and overtime wage and spread of hours orders of the New York Commission of Labor, 12 N.Y.C.R.R. § 146-1.6.  (Am. Compl. (Doc. No. 10).)  Xiao now moves to dismiss all claims against her pursuant to Fed. R. Civ. P. 12(b)(6).  (Notice of Motion (Doc. No. 28).)  For the reasons set forth below, Xiao's motion is denied.

## BACKGROUND

      The following facts are drawn from Cano's Amended Complaint and are assumed to be true for the purpose of this Memorandum and Order.

      Cano is a former employee of Sushi Village, a restaurant located at 32–50 Francis Lewis Boulevard, Flushing, NY 11358.  (Am. Compl. ¶¶ 1–2.)  Upon information and belief, Cano asserts that in each year from 2015 to 2019, Sushi Village had a gross annual volume of sales of

not less than $500,000, exclusive of excise taxes at the retail level that are separately stated. (*Id.* ¶ 44.) Cano also asserts that both he and Sushi Village were "directly engaged" in interstate commerce, as numerous food items and cleaning supplies used daily at the restaurant were produced outside of New York. (*Id.* ¶ 45.)

Cano worked at Sushi Village from approximately May 2015 until May 21, 2019. (*Id.* ¶ 9.) Cano was initially hired to work as a kitchen helper and cook, but his title was later changed to tempura maker and then teriyaki maker. (*Id.* ¶ 3.) Cano regularly handled goods in interstate commerce, such as food and other supplies produced outside of the state of New York. (*Id.* ¶ 48.) From approximately May 2015 until May 21, 2019, Cano worked six days a week, starting work between 11:00 and 11:45 AM and ending work between 10:30 or 11:00 PM. (*Id.* ¶ 51.) Cano's exact work hours varied. (*Id.*) Though he was ostensibly provided a break of between 15–20 minutes, it was often interrupted by demands to work. (*Id.* ¶ 53.)

Cano received a weekly salary during his employment. (*Id.* ¶ 54.) He was paid in cash and never received a "proper" statement of wages. (*Id.* ¶¶ 52, 61.) Cano also did not receive "all of the proper and complete notices in English and in Spanish ([his] primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1) for each year he worked or each change in rate of pay." (*Id.* ¶ 62.) From approximately May 2015 until October 2015, Cano received a weekly salary of $550. (*Id.* ¶ 55.) From approximately November 2015 until July 2016, Cano received a weekly salary of $600. (*Id.* ¶ 56.) From approximately August 2016 until January 2017, Cano received a weekly salary of $650. (*Id.* ¶ 57.) From approximately February 2017 until August 2017, Cano received a weekly salary of $680. (*Id.* ¶ 58.) From approximately September 2017 until April 2018, Cano received a weekly

2

salary of $700.  (*Id*. ¶ 59.)  From approximately May 2018 until May 21, 2019, Cano received a weekly salary of $750.  (*Id*. ¶ 60.)

Cano brings claims against Xiao in her capacity as "an owner, officer and/or agent of Defendant Sushi Chain, Inc."  (*Id*. ¶ 11.)  In her work at Sushi Village, Xiao "determined the wages and compensation of the employees … and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees."  (*Id*. ¶ 13.)  Xiao almost always issued Cano's pay, until approximately the last year of his employ, when Xiao and another manager, Jessie Li, would alternate issuing pay.  (*Id*. ¶ 15.)  Lin would issue pay to Cano and other employees during times when Xiao traveled outside of the country.  (*Id*. ¶ 34.)  Xiao represented to Cano that she was an owner of Sushi Village, alongside Lin.  (*Id*. ¶ 16.)  Once, when Cano expressed dissatisfaction at work, Xiao intervened and "personally convinced him to stay with the company by making representations about how she could authorize changes to the working conditions of the restaurant."  (*Id*. ¶ 21.)  Xiao fielded questions about pay and hours from Cano and other workers and held herself out as having authority to make decisions regarding pay and hours.  (*Id*. ¶ 22.)  Xiao authorized Cano's raises.  (*Id*. ¶ 20.)

Xiao intervened when kitchen staff were absent to issue orders to Cano regarding the preparation of food and organization of supplies.  (*Id*. ¶ 23.)  Xiao fielded questions about the supplies and inventory of the restaurant, monitored purchases made on behalf of Sushi Village, and provided authorization to make those purchases.  (*Id*. ¶ 27.)  She also fielded questions from kitchen staff about the purchasing of new kitchen equipment and solely gave authorization to make those purchases.  (*Id*. ¶ 28.)  Xiao would regularly summon employees to meetings with Lin and she participated in decisions regarding the operation of the business in those meetings.

3

(*Id.* ¶ 26.) Xiao hired employees, although it was Lin who hired Cano and issued him his initial schedule and pay rate on his first day at Sushi Village. (*Id.* ¶¶ 17, 33.)

Xiao directed the work of Cano and other workers and regularly directed the kitchen staff, including Cano, about cleaning the fry oil, cleaning the basement, cleaning the parking lot, removing snow, and performing other tasks. (*Id.* ¶¶ 19, 25.) Xiao also disciplined and castigated employees, including Cano, when she considered their performance sub-par. (*Id.* ¶ 24.) Xiao picked up and dropped off Cano for work on a daily basis for the first three years of his employment and then picked up and dropped him off two to three times per week for approximately the last year of his employment. (*Id.* ¶ 14.)

The Complaint and Motion to Dismiss

Cano asserts that Xiao, Lin, and Sushi Village "jointly employed [him] and were employers within the meaning of 29 U.S.C. § 201 *et seq.* and the NYLL," or, in the alternative, that defendants constitute a single employer. (Am. Compl. ¶¶ 41–42.) He further states that at all relevant times, defendants were his employers within the meaning of the FLSA and NYLL. (*Id.* ¶ 43.)

In his first cause of action, brought under the FLSA, Cano alleges that defendants failed to pay him overtime at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week, in violation of 29 U.S.C. § 207(a)(1), and that the violation was willful within the meaning of 29 U.S.C. § 255(a). (Am. Compl. ¶¶ 63–66.) Cano's second cause of action, also brought under the FLSA, alleges that defendants were Cano's employers within the meaning of 29 U.S.C. § 203(d), that defendants were an enterprise engaged in interstate commerce within the meaning of § 203 (r–s), that defendants failed to pay

4

Cano the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a), and that the violation was willful under 29 U.S.C. § 255(a).  (*Id.* ¶¶ 67–74.)

In his third and fourth causes of action, respectively, Cano brings parallel claims under state law: that defendants failed to pay overtime wages in the amount of one and one-half times the regular rate of pay per hour worked in excess of forty hours per week, as required by NYLL § 190 *et seq*. and associated rules and regulations; that defendants failed to pay minimum wage in violation of NYLL § 652(1); and that this violation was willful under NYLL § 663.  (*Id.* ¶¶ 75–84.)  In his fifth cause of action, Cano alleges that defendants failed to pay him one additional hour's pay for each day Cano's "spread of hours" exceeded ten hours, in violation of NYLL § 190 *et seq*. and 650 *et seq*., as well as New York Commissioner of Labor wage order 12 N.Y.C.R.R. § 146-1.6.  (*Id.* ¶¶ 85–86, 88.)  Cano argues that this spread of hours violation was willful and not in good faith within the meaning of NYLL § 663.  (*Id.* ¶ 87.)

In his sixth cause of action Cano claims that defendants failed to provide him with a written notice in English and Spanish (his primary language) containing, among other things, information about his rate of pay or the name of his employer, in violation of NYLL § 195(1).  (*Id.* ¶¶ 88–91.)  Finally, in his seventh cause of action, Cano states that defendants failed to provide him with a wage statement with each payment of wages, in violation of NYLL 195(3).  (*Id.* ¶¶ 92–94.)  Cano seeks a declaratory judgment; damages in the amount of unpaid wages, spread of hours pay, and overtime pay; liquidated damages at a rate of 100% of damages awarded; an injunction barring defendants from future violations of the NYLL; expenses; costs; and fees.  (Am. Compl. at 13–15.)[1]

---

[1] All page numbers refer to ECF pagination.

Xiao now moves to dismiss the amended complaint under Rule 12(b)(6). (Notice of Motion.) In her supporting memorandum, Xiao argues that Cano has failed to state a claim under the FLSA or NYLL because she was not an employer under either statute. (Def.'s Mem. (Doc. No. 28-1) at 9–11.) Specifically, Xiao argues that Cano's allegations are "vague and boilerplate" and do not support any of the four factors of the economic reality test set forth in *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1999). (*Id*. at 10–11.) She contends that because Cano cannot demonstrate that Xiao had the power to hire and fire workers, supervise or control their work schedules or conditions of employment, determine their rate of payment, or maintain employment records, Xiao is not Cano's employer and therefore all claims against her should be dismissed. (*Id*. at 11–16.) In support of her claim that she is not an employer, Xiao relies on material outside the pleadings. Xiao submits an affidavit stating, among other things, that she and Lin have a child together but were never married, that their romantic relationship had ended, and that she is not an owner or beneficiary of Sushi Village but merely worked part-time in his restaurant as his employee because she struggled to support herself as a single mother and relied on the success of Lin's business for child support. (Xiao Affidavit (Doc. No. 28-2) at 2.) Xiao argues that because she speaks Fuzhounese, as does Lin, and answers the phones as part of her duties, that she often serves as a "middle person" to communicate Lin's wishes to other workers, and Cano has misinterpreted this fact to support his "subjective belief" that she had management authority. (Def.'s Mem. at 14, 17.)

In his opposition, Cano argues that Xiao's assertions and accompanying factual affidavit are not cognizable upon a motion to dismiss under Rule 12(b)(6) because they rely on extrinsic evidence. (Pl.'s Opp. (Doc. No. 29) at 1, 5.) Cano points to the eighteen paragraphs of factual allegations he provided regarding Xiao's activity at Sushi Village to demonstrate that he has

6

alleged sufficient facts to support his claims against Xiao as an employer under the FLSA and NYLL. (*Id*. at 4.) Though Cano opposes converting the instant motion to a motion for summary judgment, he submits an affidavit, translated from Spanish, that sets forth the factual allegations contained in his complaint. (*Id*. at 6; *see also* Pl.'s May 4, 2020 Aff. (Doc. No. 29-1).)

In her reply, Xiao largely reiterates the argument from her prior briefing, stating that Cano's allegations are "repetitive," and "boilerplate" recitations of the elements of each claim, and "provide no facts" to support Cano's assertions of his subjective beliefs. (Def.'s Reply (Doc. No. 30) at 2.) Xiao also asserts that the language barrier between them has contributed to misunderstandings about who is the true employer. (*Id*. at 6.) Finally, Xiao asserts that Cano has failed to demonstrate that Xiao "knew of, let alone created and maintained, the purported unlawful policies," thereby failing to show that she can be held liable under the FLSA. (*Id*. at 7, quoting *Nakahata v. New York-Presbyterian Healthcare Sys.*, 2012 U.S. Dist. LEXIS 127824 at * 37–38.)

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged in the nonmovant's pleading and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In all cases a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570). When ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider only the "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as matters of which judicial notice may be taken." *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir. 1993).

## DISCUSSION

### A. Whether Xiao is an employer

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 USCS § 203(d). The Supreme Court has noted that the FLSA contains "no definition that solves problems as to the limits of the employer-employee relationship under the Act." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). The FLSA's strikingly broad definition of employer "stretches the meaning… to cover some parties who might not qualify as such under a strict application of traditional agency law principles in order to effectuate the remedial purposes of the act." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103–04 (2d Cir. 2013) (internal quotations and citations omitted).

To determine whether an individual is an employer under the FLSA, the Second Circuit in *Carter v. Dutchess Community College* identified a four-factor "economic reality" test. 735 F.2d 8 (2d Cir. 1984). The four factors ask "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. at 12. This test is not a "rigid rule for the identification of a FLSA employer," but rather "provide[s] a nonexclusive and overlapping set of factors" to consider in

8

effectuating the broad application of the FLSA. *Barfield v. NYC Health & Hosps. Corp.*, 537 F. 3d 132, 143 (2d Cir. 2008). The "economic reality test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999)).

While the Second Circuit did not resolve the question of whether the "economic reality" four-factor test should be applied under the NYLL, courts in this Circuit "have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Yu Y. Ho v. Sim Enters.*, No. 11-CV-2855 (PKC), 2014 U.S. Dist. LEXIS 66408, at *26 (S.D.N.Y. May 13, 2014) (citing *Moon v. Kwon*, 248 F. Supp. 2d 201, 236 n.17 (S.D.N.Y. 2002) ("New York law adopts a similarly broad definition of 'employer' in the context of its minimum wage and overtime laws.")).

Xiao asserts that Cano has not alleged sufficient facts to demonstrate that she is an employer under the economic reality test. Cano has alleged that Xiao told him and other workers to perform tasks at the restaurant, including preparing food, organizing supplies, and cleaning in or around the restaurant; that she hired, fired, disciplined, and "castigated" employees; that she authorized purchases of supplies and kitchen equipment; and that she told him she would intervene to improve his working conditions when he expressed dissatisfaction at work. These allegations, if true, might be sufficient to show that Xiao had the power to hire and fire, and that she controlled the conditions of employment for Cano and other workers. Further, Cano alleges that Xiao paid him weekly and authorized his pay raises, and that she fielded questions from Cano and other workers regarding pay and hours, which satisfies that the third prong of the economic reality test: that she determined the rate and method of payment. Though Cano merely states that Xiao maintained employee records, without alleging specific facts, the absence of

9

support for the fourth factor is not dispositive. Cano has therefore stated a plausible claim that Xiao was an "employer" within the meaning of the FLSA and NYLL.

Xiao asserts, citing *Nakahata*, that she should not be considered an employer because Cano has not submitted evidence that she was involved in the creation or maintenance of the illegal policies. (Def.'s Reply at 7, citing 2012 U.S. Dist. LEXIS 127824 at * 37–38.) The instant case is distinguishable. In *Nakahata*, plaintiffs had named several CEOs and directors of various hospitals and medical centers, none of which employed plaintiffs, and made only the conclusory assertion that these CEOs and directors had been involved in the creation of illegal policies or practices to which plaintiffs had been subjected. 2012 U.S. Dist. LEXIS 127824 at * 36–38. In contrast, here Cano alleges specific actions taken by Xiao, and representations she made to Cano and other employees about her authority within the restaurant, that are sufficient to satisfy three prongs of the four-prong economic reality test. Accordingly, Cano need not demonstrate that Xiao had a hand in the creation of illegal policies where he has already sufficiently alleged that Xiao is an employer within the meaning of the FLSA and the NYLL.

### B. Whether to convert Xiao's motion to dismiss to one for summary judgment

Xiao argues that Cano's allegations are conclusory and false because, as she claims to demonstrate through submissions external to the pleadings, she was merely a messenger for Lin and has no ownership or managerial authority within Sushi Village. (Def.'s Mem. at 7, 12–14.) This argument is unavailing on a motion to dismiss, which requires this Court to assume that Cano's allegations are true and draw all reasonable inferences in his favor. *See Harris*, 572 F.3d at 71. Under Federal Rule of Civil Procedure 12(d), "when parties present matters outside the pleadings on a motion to dismiss, the court must either decide the motion based on the complaint alone, without considering the additional material, or else convert the motion to one for summary

10

judgment under Rule 56." *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 357 (S.D.N.Y. 2016) (citing *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)). Should the court decide to convert the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In exercising this discretion, a court must consider "whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Fernandez*, 159 F. Supp. 3d at 357 (internal citations and quotations omitted).

Here, Cano had no notice that the instant motion would be converted into one of summary judgment prior to Xiao's filing, and has had no opportunity to cross-examine Xiao or engage in discovery in order to determine the veracity of her statements. (*See* Pl.'s Opp. at 6.) Further, many of the statements contained therein address irrelevant issues such as Xiao's romantic and co-parenting history with Lin, her financial situation, and allegations about Cano's motivations based on an unrelated proceeding between Xiao and Cano's brother. Accordingly, this Court declines to convert the instant motion to one for summary judgment.

## CONCLUSION

For the reasons set forth above, Xiao's motion to dismiss the complaint is denied. This action is recommitted to Magistrate Judge Bloom for all remaining pre-trial matters, including settlement discussions if appropriate.

SO ORDERED.

Dated: Brooklyn, New York
    January 11, 2021

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge

11