UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDRES PORFIRIO CANO,

                Plaintiff,                            **REPORT AND RECOMMENDATION**
                                                                      19 CV 3509 (DG) (LB)

   -against-

SUSHI CHAIN, INC.,
EN MAI XIAO *A.K.A.* TINA XIAO,
XIN FENG LIN *A.K.A.* SCOTT LIN, MIN LIN,
and 3250 FRANCIS LEWIS INC.,

                Defendants.
-------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Under certain circumstances, successor liability will hold one business liable for the labor law violations of a prior business. Here, plaintiff alleges that defendants Min Lin and 3250 Francis Lewis Inc. are liable to him as they operate a similar restaurant in the same location as the restaurant where he used to work. Min Lin and 3250 Francis Lewis Inc., the alleged "successor defendants," move to dismiss plaintiff's second amended complaint. As plaintiff fails to allege a sufficient connection between the original and newly named defendants, he fails to state a claim for successor liability.

      Plaintiff Andres Porfirio Cano initially brought this action against defendants Sushi Chain, Inc. (d/b/a Sushi Village), En Mei Xiao (Tina Xiao), and Xin Feng Lin (Scott Lin) (collectively the "original defendants") alleging that defendants violated his rights under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to pay him minimum and overtime wages, spread of hours pay, and failing to provide him with required wage statements and notices. See Complaint, ECF No. 1. Plaintiff filed an amended complaint on September 12, 2019. ECF No. 10. On April 20, 2021, plaintiff filed a second amended complaint alleging that the original defendants ceased operating their restaurant in August of 2020 and adding the successor defendants,

1

the current operators of New Sushi Village, a restaurant in the same location as the original defendants' restaurant. Second Amended Complaint ("SAC"), ECF No. 36, ¶¶ 2, 3. Plaintiff names the new defendants under the theory that they assumed liability for the labor law violations plaintiff alleges as successors in interest to the original defendants. Id. ¶ 3. The successor defendants move to dismiss the SAC for failure to state a claim. ECF No. 42. The Honorable Roslynn R. Mauskopf[1] referred the successor defendants' motion to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the successor defendants' motion to dismiss should be granted and plaintiff's claims against Min Lin and 3250 Francis Lewis, Inc., should be dismissed.

## BACKGROUND

Plaintiff was employed at Sushi Village, a restaurant located at 32-50 Francis Lewis Blvd. in Flushing, Queens, from approximately May of 2015 to May 21, 2019, first as a kitchen helper, and later as a tempura and teriyaki maker. SAC ¶¶ 5, 11. Plaintiff was paid a weekly wage in cash. He alleges that throughout his employment he worked more than 40 hours per week, but defendants failed to pay him for the hours he worked over 40; defendants also failed to pay him spread of hours pay for the days he worked more than ten hours. Id. ¶¶ 6, 7. Plaintiff also alleges that defendants failed to provide him with the statutorily required wage statements and notices. Id. ¶ 83. Plaintiff filed his complaint against the original defendants in this case on June 13, 2019. ECF No. 1. In August 2020 the original defendants ceased operating their restaurant and abandoned their lease. SAC ¶ 2. Plaintiff filed his second amended complaint seeking to add the successor defendants on April 20, 2021. ECF No. 36.

---

[1] The case was reassigned to the Honorable Diane Gujarati on July 9, 2021. Docket Entry 07/09/2021.

Plaintiff alleges the successor defendants operate a restaurant, "New Sushi Village," in the same location as Sushi Village. The SAC does not allege that the successor defendants purchased the original defendants' business, and the successor defendants allege that they had no knowledge of or dealings with the original defendants. See SAC; Defendants' Memorandum of Law in Support of the Motion to Dismiss Plaintiff's Second Amended Complaint ("Memo"), ECF No. 42 at 5; Declaration of Min Lin ("Lin Decl."), ECF No. 41-2 ¶¶ 4–6. However, plaintiff's opposition argues that the successor defendants purchased the business from the original defendants. Plaintiff's Memorandum of Law in Opposition ("Opp'n"), ECF No. 45 at 4. Defendants' reply refutes this claim. Reply, ECF No. 47 ¶¶ 9, 12.[2]

The SAC alleges that the successor defendants are liable to plaintiff because defendants are joint employers acting in the interest of "each other with respect [to] Sushi Village." Id. ¶ 54. The SAC further alleges that the successor defendants are "successors in interest and liability to the sushi restaurant operated by [the original defendants]." Id. ¶ 62. Specifically, the SAC alleges that the successor defendants serve "substantially the same" menu as the original defendants "at the same location with substantially the same décor, furnishings, frontage and signage." Id. ¶ 63. Plaintiff also alleges that the successor defendants have substantially the same job positions and employment structure as the original defendants and utilize the original defendants' website. Id. ¶¶ 64–65. Finally, plaintiff alleges that the successor defendants "knew or should have known that a lawsuit was pending against Sushi Village," when the successor defendants took over the restaurant. Id. ¶ 66.

---

[2] As discussed below, the Court cannot consider allegations outside of the pleadings on a motion to dismiss.

**PROCEDURAL HISTORY**

Plaintiff filed his complaint against the original defendants on June 13, 2019. ECF No. 1. Before the original defendants responded to the complaint, plaintiff filed an amended complaint, on September 12, 2021, which the defendants Scott Lin and Sushi Chain, Inc. answered on October 22, 2019. ECF Nos. 10, 12. Defendant Tina Xiao requested a pre-motion conference but agreed to withdraw her request without prejudice when Magistrate Judge Gold[3] referred the parties to Court-annexed mediation. ECF Nos. 16, 17. Defendants failed to appear at the mediation.[4] Defendant Xiao renewed her request for a pre-motion conference and moved to dismiss on May 12, 2020. ECF Nos. 20, 24, 28. Xiao's motion to dismiss was denied on January 11, 2021. ECF No. 31. Following the initial conference on February 4, 2021, plaintiff moved to file a second amended complaint to add the successor defendants. ECF No. 35, 36. The original defendants answered the SAC and the successor defendants filed the instant motion.

**DISCUSSION**

**1. Legal Standard**

A court reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," id., or "speculative," Twombly, 550 U.S. at 555;

---

[3] This case was reassigned to me on January 8, 2021. Docket Entry 01/08/2021.
[4] Neither defendants nor their counsel appeared for the mediation. Instead, a relative who did not speak English and an attorney purporting to have been hired by that relative appeared. Judge Gold sanctioned defendants for failing to appear by making them pay plaintiff's attorney's fee and expenses incurred at the mediation. ECF No. 20.

they must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

As a general rule, courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." Nakahata v. New York-Presbyterian Healthcare Sys, Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citation omitted). Moreover, courts "do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Associates, L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)). This Court cannot consider affidavits submitted with a motion to dismiss and will not rely on factual allegations made in legal briefs or memoranda. Freidl v. City of New York, 210 F.3d 79, 83–84 (2d Cir. 2000).

**2. Analysis**

Defendants attach Min Lin's affidavit to their motion, and both parties allege new facts in their memoranda supporting and opposing the motion. See generally Lin Decl., ECF No. 41-2; Memo., ECF No. 42; Opp'n, ECF No. 45. The Court cannot consider material outside the pleadings on a motion to dismiss. The Court only considers whether plaintiff pleads sufficient facts in his SAC which, if taken as true, state a claim for successor liability.[5] See Williams v. U.S. Info. Sys., Inc., 11 Civ. 7471 (ER), 2013 WL 214318, at *4 n.4 (S.D.N.Y. Jan. 17, 2013) (holding that in ruling on a motion to dismiss a court may only consider allegations raised in the complaint, and not in opposition papers).

Plaintiff was not employed by the successor defendants. Plaintiff's SAC alleges that he was employed at Sushi Village from approximately May 2015 to May 2019 and that the original

---

[5] Even if they could be considered, the allegations in plaintiff's opposition to the motion would not save plaintiff's SAC.

defendants operated the restaurant until August of 2020. SAC. ¶¶ 2, 11. Under the FLSA, employer status is determined by whether the individual had operational control over the employee. Moreno v. Ramos, 17 Civ. 9439 (LTS)(KNF), 2021 Wl 637563 at *3 (S.D.N.Y Feb. 17, 2021) (citation omitted). As plaintiff's employment ended over a year before the successor defendants began operating their restaurant, plaintiff's SAC does not establish that they had control over plaintiff's employment. Therefore, the successor defendants are not plaintiff's employers.[6]

The Court turns next to consider the theory of successor liability. Courts in this circuit apply two different tests to determine successor liability in the FLSA context: the traditional New York common law test, and the "substantial continuity test." Rotthoff v. New York State Catholic Health Plan, 19-CV-4027 (AMD)(CLP), 2020 WL 5763862 at *6 (E.D.N.Y. Sept. 28, 2020). The Second Circuit has not yet decided which test should be applied in this context, but the "weight of the authority in [the Second] Circuit supports applying the substantial continuity test." Id. at *7 (collecting cases). Courts in other circuits have also applied the "substantial continuity test." Battino v. Cornelia Fifth Ave., LLC, 861 F. Supp. 2d 392, 402 (S.D.N.Y. 2012) (citing decisions from the Ninth Circuit, the District of Kansas, and the District of Nebraska). This Court need not resolve this issue because under either test, defendants' instant motion to dismiss should be granted.

    *i.*    *The Traditional Test*

Under New York law and the common law, a successor corporation is generally not liable for the predecessor's liabilities, but can be found liable if one of the following exceptions exists: "(1) [the successor] expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere

---

[6] Although the SAC contains a section titled "Defendants Constitute Joint Employers," there is no basis for finding the successor defendants as joint employers. Every paragraph from ¶ 54 to ¶ 61 of the SAC appears verbatim in the original complaint. See SAC ¶¶ 54–61; Complaint, ¶¶ 20–27. Additionally, this section of the SAC makes numerous references to defendants acting jointly with respect to Sushi Village (not New Sushi Village) and describes the time period of 2015–2019, i.e., before the successor defendants began operating the restaurant. SAC ¶¶ 54–61.

continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006) (citation omitted). Plaintiff's SAC contains no allegations whatsoever that the successor defendants assumed the original defendants' tort liability or that the abandoning of the premises by the original defendants and subsequent opening of New Sushi Village by the successor defendants was a fraud entered into to escape such liability. Therefore, successor liability is unavailable to plaintiff based on either the first or fourth exceptions detailed above.

The Second Circuit has stated that the second and third exceptions (the "de facto merger" and "mere continuation" exceptions) are "so similar that they may be considered a single exception." Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 n.3 (2d Cir. 2003). Necessary to the application of these exceptions however is the continuity of ownership. Marte v. Wesbury Mini Mart, Inc., 16-Cv-53 (SJF)(ARL), 2017 WL 9485667 at *8 (E.D.N.Y. Jan. 18, 2017) ("[W]here ownership actually changes hands, there can be no finding of the de facto merger (or mere continuation) exception.") (citing Battino, 861 F. Supp. 2d at 401); Xue Ming Wang v. Abumi Sushi Inc., 262 F. Supp. 3d 81, 87 (S.D.N.Y. 2017) ("Because 'continuity of ownership is the essence of a merger,' however, the exception 'cannot apply in its absence.'") (quoting Priestly v. Headminder, Inc., 647 F.3d 497, 505–06 (2d Cir. 2011)). The SAC does not allege continuity of ownership in this case. Plaintiff alleges only that the original defendants abandoned the restaurant, and the successor defendants operate a very similar restaurant in the same location. Plaintiff thus fails to allege facts to establish successor liability under the traditional test.

    *ii.*    *The Substantial Continuity Test*

The substantial continuity test is broader than the traditional test and instead of continuity of ownership looks to "whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations."

7

Battino, 861 F. Supp. 2d at 405 (quotation omitted). Courts applying the substantial continuity test typically look to nine factors enunciated by the Sixth Circuit in the Title VII context:

> "(1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product."

Xue Ming Wang, 262 F. Supp. 3d at 89 (quoting E.E.O.C. v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1094 (6th Cir. 1974)). The first three factors: notice, the ability of the predecessor to provide relief, and whether there has been substantial continuity of business operations, are given more weight than the other factors. See Battino, 861 F. Supp. 2d at 404 (finding that courts in the Southern District of New York have focused on the first three factors and that the fourth through ninth factors are "essentially a subset of factors to consider in determining whether there was 'substantial continuity of business operations'") (citation omitted); Moreno, 2021 Wl 637563 at *3–4 (the fourth through ninth factors are given less weight than the "more significant" factors). The party seeking to impose successor liability bears the burden of proof as to all factors of the substantial continuity test. Xue Ming Wang, 262 F. Supp. 3d at 92. It is not defendants' burden to show that they did not have notice of a pending charge or lawsuit. Id. (citation omitted). Plaintiff fails to allege a basis for successor liability in this case.

Plaintiff's only allegation regarding the first factor is: "[t]he Successor Defendants knew or should have known that a lawsuit was pending against Sushi Village . . . when . . . the Successor Defendants took over in August of 2020." SAC ¶ 66. This conclusory statement is insufficient to

8

plausibly establish successor liability.[7] The SAC does not allege that the original defendants and the successor defendants had any prior relationship whatsoever. Finding successor liability in this case would impose a non-existent duty on businesses to investigate whether the former occupants at their business' location violated any law.

In Xue Ming Wang, the Court rejected that defendants should be charged with notice of alleged wage and hour violations if they could have discovered the claims through due diligence. Xue Ming Wang, 262 F. Supp. 3d at 93 ("The Court declines to undermine the notice requirement of the substantial continuity test, and to impose such a duty in the absence of a contrary command from the Second Circuit."). I too decline to impose such a duty in this case. While the instant action was pending at the time that the successor defendants opened their restaurant, plaintiff fails to allege any basis for their conclusory allegation that the successor defendants knew or should have known about plaintiff's lawsuit. Therefore, the first factor weighs against finding successor liability in this case.

The SAC does not allege that the original defendants will be unable to provide relief to plaintiff. See Marte 2017 WL 9485667 at *9 (finding that the complaint's silence as to the ability of the predecessor to provide relief weighs against imposing successor liability).[8] This factor weighs against finding successor liability.

With regard to the final more important factor, whether there has been substantial continuity of business operations, the SAC is unclear. The SAC alleges that the original defendants ceased their operation of Sushi Village and abandoned their lease in August of 2020. SAC ¶ 2. The SAC

---

[7] Plaintiff's opposition alleges that the successor defendants purchased the business from the original defendants. Opp'n at 4. This allegation is not in the SAC and cannot be considered. Williams, 2013 WL 214318, at *4 n.4.
[8] Plaintiff's opposition argues for the first time that the original defendants are unable to pay because they have "conveyed their main, possibly only, business to the [successor defendants]." Opp'n at 4. Had the original defendants sold their business, they presumably would have received proceeds from the sale, which could be used to satisfy their liabilities. See Xue Ming Wang, 262 F. Supp. 3d at 95 (that defendants received money from the sale of their business weighs against a finding that they could not provide relief to plaintiff).

does not allege when the successor defendants took over the premises or began operating New Sushi Village, it just states that, at the time of the filing of the SAC (April 20, 2021), the successor defendants were operating their restaurant.[9] Id. ¶ 3. Without specifically alleging when the successor defendants took over operation of the restaurant, plaintiff attempts to cast doubt on the successor defendants' claims by arguing in his opposition that the corporate successor defendant was formed in February of 2020, and that in her declaration, Min Lin "makes no representations about any cessation of business." Opp'n at 4. These arguments try to raise the inference that if the successor defendants created the corporation prior to the original defendants abandoning the restaurant, there must have been substantial continuity of business operations. Such speculation does not save plaintiff. The SAC fails to allege facts to plausibly find substantial continuity of business operations. This final primary factor also weighs against the finding of successor liability.

Of the remaining factors, plaintiff's allegation that the new restaurant is in the same location can be understood to satisfy factors four and eight, that the successor defendants use the same "plant" and "machinery," which weigh in favor of finding successor liability. SAC ¶ 63. Plaintiff also specifically alleges that the successor defendants utilize the same employment structure as the original defendants, so factor seven also weighs in favor of finding successor liability. Id. ¶ 64. However, the successor defendants allege that they employ an entirely different staff than the original defendants, weighing factors six and seven against successor liability. Finally, while plaintiff alleges that the successor defendants offer "substantially the same sushi fusion menu," id. ¶ 63, which would satisfy the ninth factor—producing the same product—these factors do not outweigh the first three factors. After all, a sushi restaurant is a sushi restaurant. If that was all that it took to establish successor liability, substantial continuity would be somewhat meaningless.

---

[9] Although the Court does not consider it, Lin's declaration argues that the successor defendants re-opened the restaurant in December 2020, after remodeling and applying for a new liquor license. Lin Decl. ¶¶ 7–10.

Therefore, plaintiff fails to allege successor liability under the substantial continuity test.

### iii.     Leave to Amend

Plaintiff's opposition requests that in the event the Court does not find a basis for successor liability, that plaintiff should be granted leave to amend. Opp'n at 5. Because the Court's deadline to amend the pleadings has passed, see Docket Entry February 4, 2021, plaintiff must show good cause why that deadline should be modified. BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC, 859 F.3d 188, 195 (2d Cir. 2017). The primary consideration of whether a plaintiff has shown good cause is whether they have acted diligently, but a court may also consider whether allowing amendment at this stage would prejudice defendants. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243–44 (2d Cir. 2007) (citation omitted).

Plaintiff does not demonstrate that he has acted diligently. He requests to amend his complaint for a third time to further clarify allegations made in the SAC. There is no reason why plaintiff could not have included these allegations in the SAC.[10] Therefore, the Court finds that plaintiff has not acted diligently in attempting to comply with the Court's deadline. Charter Commc'ns, Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO, 338 F. Supp. 3d 242, 254 (S.D.N.Y. 2018) ("A party has not acted diligently where the proposed amendment to the pleading is based on information 'that the party knew, or should have known,' in advance of the deadline sought to be extended.")  (citations omitted). Furthermore, granting plaintiff leave to replead his complaint would prejudice defendants, because the successor defendants would likely move to dismiss again, which would significantly delay the resolution of this case for all parties. Accordingly, plaintiff's request for leave to replead his SAC should be denied.

---

[10] No new matter has been discovered such as whether the original defendants sold their business to the successor defendants.

## CONCLUSION

Plaintiff's SAC alleges that plaintiff worked for the original defendants until May 21, 2019, and the original defendants abandoned their business in August of 2020. Some time thereafter, the successor defendants began operating a similar restaurant at the same location. The successor defendants never employed plaintiff, and plaintiff fails to allege that they had any relationship with the original defendants. Thus, there is no basis for successor liability. Plaintiff also fails to demonstrate good cause for further leave to replead. Accordingly, I respectfully recommend that the successor defendants' motion to dismiss should be granted, and plaintiff's request to amend his complaint for the third time should be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 152 (1985).
SO ORDERED.

                                                  /S/
                                    LOIS BLOOM
                                  United States Magistrate Judge

Dated: November 22, 2021
       Brooklyn, New York